UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x          Subchapter V
In re

                                                                    Case No. 20-71624 (ast)

**CORNELL ST. HEMPSTEAD, LLC**,


                                          Debtor
---------------------------------------------------------x

### UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF THE DEBTOR'S PROPOSED SUBCHAPTER V PLAN OF REORGANIZATION

**TO:    THE HONORABLE ALAN S. TRUST;**
**         UNITED STATES BANKRUPTCY JUDGE**:


        **WILLIAM K. HARRINGTON**, the United States Trustee for Region 2 (the

"United States Trustee"), by his counsel, in furtherance of his duties under 28 U.S.C. section 586

as and for his objection to the proposed plan of reorganization (the "Plan") filed by Cornell St.

Hempstead, LLC (the "Debtor") represents and alleges as follows:


### PRELMINARY STATEMENT

        The Debtor is a non-operating, non-income producing entity.  On June 9, 2020,

the Debtor filed its proposed plan of reorganization ("Plan") which is legally unconfirmable

because the Plan does not comply with Bankruptcy Code section 1129, or the Bankruptcy Code

sections 1190, 1191 and 1194 governing confirmation of a subchapter V plan of reorganization.

Lack of compliance with section 1129 includes improperly characterizing a class of claims as

unimpaired, and a failure to disclose the means of implementation, as required by Bankruptcy

1

Code section 1122.  Additionally, based upon a lack of income, the Plan cannot satisfy the feasibility requirements at section 1129(a)(11).

With respect to the confirmation requirements under subchapter V, the Plan, which is apparently non-consensual, fails to comply with the mandatory disclosure requirements of Bankruptcy Code section 1190 by failing to include the required financial information. Because there is none of the required financial information it is impossible to calculate the Debtor's disposal income over the term of the Plan or determine whether the value of the property to be distributed is not less than the Debtor's disposal income. Consequently, the Debtor cannot carry its burden that proposed treatment of the impaired unaccepting classes is nondiscriminatory and fair and equitable.  Because there is no income, the Debtor cannot provide any assurances that the Debtor can make the required payments.  Finally, the non-consensual Plan does not require all future earnings to be under the supervision or control of the Trustee, and fails to provide an appropriate remedy, including liquidation of nonexempt property, upon the Debtor's default.  As such, the Plan unconfirmable under subchapter V.  Because of the Plan fails to satisfy the confirmation requirements of the Bankruptcy Code, the United States Trustee requests that the Court deny confirmation.

The United States Trustee also submits that the Debtor's omissions have hindered the reorganization process and demonstrate that the Plan is not proposed in good faith.

## **FACTS**

1.    On March 13, 2020, Cornell St. Hempstead LLC (the "Debtor") filed its voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code") and simultaneously elected to be treated as a Sub-Chapter V small business debtor (ECF Docket No. 1).

2.      The Debtor is represented by the firm of Hasbani & Light, P.C, Seth Weinberg, Esq., as counsel ("Counsel").

3.      On March 16, 2020, the United States Trustee appointed Salvatore LaMonica as the subchapter V trustee (the "Trustee") (ECF Docket No. 2).

4.      According to the Debtor's schedules, the Debtor is the owner of the real property at 157 Cornell St., Hempstead, New York (the "Property"), which is the Debtor's sole asset. The schedules list one creditor, Deutsche Bank National Trust Company as Trustee for Long Beach Mortgage Loan Trust 2003-5, the holder of a lien against the Property in the approximate amount of $424,000 ("First Lienholder").

5.      The Debtor's principal testified at the April 14, 2020 first meeting of creditors, that the Debtor acquired the Property by purchasing the referee's deed in connection with the second mortgagee's foreclosure action. The Debtor, therefore, acquired the Property subject to the lien of the First Lienholder. The Debtor's principal also testified that Property is not rented.   Because the Debtor has failed to file any monthly operating reports, there is no information concerning the Debtor's post-petition operations.

6.      On April 22, 2020, the Debtor moved by Notice of Presentment seeking entry of an order valuing the Property at $120,000 (ECF Docket No. 19). The Debtor's motion was granted on default, on April 27, 2020 (ECF Docket No. 23).

7.      On May 28, 2020, the Debtor moved seeking approval of its application to obtain post-petition financing on a super-priority basis and granting adequate protection (ECF Docket No. 25). The financing motion is returnable on July 29, 2020.

8.      In its financing motion, the Debtor seeks authority to borrow up to $75,000 from Loyd Financing LLC on a super-priority basis, secured by a priming lien against the Property. According to the application, the borrowing would be used to pay administrative costs, to pay for capital expenditures to renovate the Property and to pay creditors (ECF Docket No. 25, proposed order at paragraph 3).   The financing budget consists of a list of projects and contains no information as to what work will be done, who will perform the work, whether the contractor is licensed or insured.

9.      Apparently, without contacting the Trustee, on June 9, 2020, the Debtor filed its proposed plan of reorganization (ECF Docket No. 29).  The Plan classifies creditors into three classes of claims and one class of interests:  Class 1 consists of the Administrative Creditors; Class 2 consists of the secured claim of the First Lienholder; Class 3 consists of the First Lienholder's unsecured claim; and Class 4 consists of the interests of the Debtor's principals.

10.     The Plan provides that the administrative creditors will be paid in full, that the Class 2 creditor, the First Lienholder's secured claim, will be paid $1,200 per year for two years, and at  "the conclusion of the plan" will be paid $120,000; Class 3, the undersecured portion of  First Lienholder's claim, valued at $304,000, will be paid $5,000 "at the conclusion of the plan." The Class 4 interest holders will retain their interests.  The Plan asserts that all of the Classes are unimpaired with the exception of Class 2, although Class 4 is a non-voting class.

11.     According to the Plan, the effective date is 15 days after entry of the order confirming the plan (*see* Plan definition at section 1.23).  The Plan provides that the Disbursing Agent will make all the Plan payments and defines the Disbursing Agent as the Debtor (*see* Plan at definition 1.22).

12.     With the exception of referencing the Debtor's motion seeking post-petition financing on a super-priority basis (*see* Plan at section 5.01), the Plan does not contain any means of implementation.  There is no history of the Debtor set forth in the Plan and no financial information such as a liquidation analysis or projections.  Upon the Debtor's default, there are no provisions providing for any remedies.

13.     The Debtor's lack of financial disclosure effectively negates the Trustee's ability to perform the Trustee's statutory functions, including furnishing information and reviewing claims (*See* Bankruptcy Code section 704(a)(2), (5), and (7)).  Moreover, despite filing what appears to be a non-consensual Plan, the Debtor has failed to provide any mechanism to notify the creditors.

## APPLICABLE LAW

14.      The subchapter V Small Business Debtor Reorganization provisions of the Bankruptcy Code ("subchapter V") went effective on February 19, 2020, enabling a small business chapter 11 debtor to elect to proceed under subchapter V as set forth in sections 1181 through 1195 of the Bankruptcy Code.  Subchapter V was enacted to provide a less expensive and quicker resolution of a small business case and consequently, affords certain benefits not available to other small business debtors, or to debtors proceeding as other than a non-small business chapter 11 debtor.

15.     Some of the benefits include an exemption from the payment of United States Trustee's quarterly fees, an ability to confirm a non-consensual plan, exception from the requirement to file a disclosure statement and a provision that enables the owners of a small business to retain their interests  (*See generally* 11 U.S.C. sections 1181, *et. seq.*).

16.    If proceeding as a subchapter V small business debtor, the debtor must file a plan of reorganization within 90 days from the date of the order of relief (*see* Bankruptcy Code section 1187(b)).  The proposed plan must contain a brief history of the debtor's operations, a liquidation analysis, and projections evidencing the debtor' ability to make the plan payments (*see* Bankruptcy Code section 1190(1)).  The plan must also provide for the submission of all or such portion of the debtor's future earnings or future income to the supervision and control of the trustee, if necessary, for the execution of the plan (*see* 11 U.S.C. section 1190(2)).

17.    A subchapter V plan may be confirmed either consensually or non-consensually (*see* 11 U.S.C. section 1191).   Under Bankruptcy Code section 1191(a), a consensual Subchapter V plan must comply with the requirements for confirmation of a chapter 11 plan under Bankruptcy Code section 1129(a), with the exception of paragraph 15. Under section 1191(b), the court may confirm a non-consensual plan.  In addition to an exemption from compliance with section 1129(a)(15), a non-consensual subchapter V plan, that is, one that does not comply the voting requirements of section 1129(a) (8) and (10),  may be confirmed, if the plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired and has not accepted the plan (*see* Bankruptcy Code section 1191(b)).

18.    To satisfy the fair and equitable requirements, so as to confirm a non-consensual plan, as of the effective date of the plan, all of the debtor's projected disposable income received during the three or five year term of the plan must be applied to make payments under the plan, or the value of the property to be distributed under the plan must not be not less than the debtor's projected disposal income (*see* Bankruptcy Code section 1191(c)).  At section 1191(d), disposable income is defined as income received by the debtor that is not reasonably

necessary to be expended for the maintenance or support of the debtor or the payment of expenditures necessary for the continuation, preservation or operation of the debtor's business (*see* Bankruptcy Code section 1191(d)).

19.    Additionally, to confirm a non-consensual plan, the debtor must also be able to make the plan payments, or there must be a reasonable likelihood that the debtor will be able to make all the payments, and the plan must provide appropriate remedies for non-payment, including the liquidation of nonexempt assets *(see* Bankruptcy Code section 1191(c)(3)). Finally, Bankruptcy Code sections 1124 defining impairment, and 1126 governing acceptance of a plan are applicable to a Subchapter V case.

## ARGUMENT

**The Plan is Unconfirmable under Bankruptcy Code section 1129
and under the provisions of Subchapter V**

20.    The Plan in the instant case runs afoul of several provisions of the Bankruptcy Code section 1129(a) governing confirmation.  In addition to classifying the administrative creditors, the Plan also improperly characterizes Class 2 as "unimpaired" under section 1124.  These infirmities render the Plan unconfirmable under 1129(a)(1) because the Plan fails to comply with the applicable provisions of the Bankruptcy Code.  Additionally, the Plan fails to contain information demonstrating feasibility, thereby precluding confirmation under section 1129(a)(11).

21.    The Plan is also unconfirmable under the Subchapter V small business provisions at Bankruptcy Code section 1190, *et seq.*, because it fails to comply with any of the requirements of section 1190.  Under Bankruptcy Code section 1190, entitled "Contents of

plan," the debtor's plan must include background information, and financial information, in the form of a liquidation analysis, together with projections with respect to the debtor's ability to make the payments, and the submission of all future income to the trustee, if necessary.

22.    The Plan contains none of the required information.  The Plan fails to provide a history of the Debtor, projections or a liquidation analysis.  Moreover, under section 1190(2), if necessary, the Plan must provide that the future earnings or income necessary to implement the Plan be supervised and controlled by the trustee.  The "if necessary" language refers to Bankruptcy Code section 1194 (b), which requires the trustee to make the distributions in connection with a non-consensual plan.  Because this Plan is non-consensual, the Trustee must make the Plan distributions.  But, in the instant case, the Debtor is defined as the "disbursing agent" (*see* Plan at definition 1.22 providing that the Debtor will be the disbursing agent).  The complete failure to comply with the disclosure and distribution requirements of a Subchapter V plan, renders the Plan unconfirmable.

23.    The Plan's treatment of claims is also problematic.  The Plan classifies the secured portion of the First Lienholder's claims in Class 2, proposes a payment of $1,200 for each of the next two years and after two years, "at the conclusion of the plan" proposes a $120,000 payment.  According to the Plan, Class 2 is "unimpaired."  But, according to Bankruptcy Code section 1124[1], a class is only unimpaired if it leaves unaltered the legal, equitable and contractual rights of the holder, or cures any default, reinstates maturity dates, and compensates such claim for any damages.  It is submitted that the proposed treatment of the Class 2 creditor does not render the class unimpaired.   Consequently, to achieve confirmation, the Debtor must establish that the Plan does not discriminate unfairly and is fair and equitable

---

[1] According to Bankruptcy Code section 1181(a), Bankruptcy Code sections 1124 and 1126 are not inapplicable to a case filed under subchapter V.

with respect to the treatment of the First Lienholder's secured claim (*See* Bankruptcy Code section 1191(b)).

**The Plan Does Not Comply with the Fair and Equitable Requirements**

24.    As set forth herein, and although the Debtor has not specifically indicated as such, the proposed Plan does not appear to be consensual.  Therefore, to achieve confirmation, the Plan must comply with Bankruptcy Code section 1191(b) with respect to the treatment provided to both Classes 2 and 3, both of which classes are impaired.  Initially, because Class 2 consists of the claim of a non-accepting secured creditor, the Plan must satisfy the requirements of section 1129(b) (2) (*see* 11 U.S.C. section 1191(c)(1)).   And, because the Plan is not consensual, with respect to both Classes 2 and 3, the Debtor must demonstrate that the Plan complies with the fair and equitable requirements under 1191(c), subsections (1) and (2), by demonstrating that all of the Debtor's projected disposable income over the term of the Plan will be applied to Plan payments, or that all of the property to be distributed under the plan is not less than the Debtor's disposal income.  The Debtor must also demonstrate that it has the ability to make the payments to comply with Bankruptcy Code section 1191(c)(3)(A). Finally, under 1191(c)(3)(B), in the event of default, the Plan must contain appropriate remedies, including liquidation of nonexempt assets.  As will be shown here, because there is no means of implementation and no financial information provided, the Plan cannot satisfy the confirmation requirements at Bankruptcy Code section 1191(b) and cannot be confirmed.

25.    To comply with the fair and equitable requirements, with respect to Class 2's secured claim, the Plan must comply with section 1129(b)(2)(A). That is, the plan must provide that the holder of a secured claim retains its lien and that the holder of the claim receives

on account of its claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the plan's effective date, of at least the value of the holder's interest in the estate's interest in the property (*see* Bankruptcy Code section 1129(b)(2)(A)(i)(I) and (II)).  As such, in addition to providing that the First Lienholder retains its lien, based upon the order approving the valuation of the Property, to achieve confirmation the Debtor must pay the First Lienholder's secured claim at least $120,000.

26.     The Plan in the instant case, although providing a payment in the amount of $120,000, which may arguably provide for an appropriate payment, does not provide that the First Lienholder will retain its lien, and thereby is not in compliance with section 1129(b)(2)(A)(i)(I).

27.     With respect to treatment of Classes 2 and 3, the Plan fails to comply with the fair and equitable requirements set forth a section 1191(c).  The Plan does not contain a provision requiring the Debtor to apply all of its projected disposable income over the three to five year term of the plan to payments under the plan,[2] and does not provide that the value of the property to be distributed under the Plan is not less than the Debtor's projected disposable income.

28.     The Plan provides that the First Lienholder's Class 2 claim will be paid $1,200 for two years and $120,000 "at the conclusion of the Plan." The First Lienholder's unsecured claim, valued at approximately $304,000, will be $5,000, "at the conclusion" of the Plan.

---

[2] The Plan provides for payments over two years, but contains no explanation why that timetable was selected.

29.     As set forth herein, the fair and equitable standard requires the Debtor to demonstrate that all of the disposable income is devoted to plan payments (see Bankruptcy Code section 1191(c) and (d)).  But, the Plan contains no financial information.

30.     The lack of financial information precludes confirmation under Bankruptcy Code section 1191 because Bankruptcy Code section 1191(c) requires that the Plan devote all of the debtor's projected disposable income received in the three or five year period to plan payments, or the value of the property distributed under the plan in the three or five year period must not be not less than the disposable income of the debtor.

31.     Since the Debtor has failed to provide any financial information, there is no way to calculate the Debtor's disposal income, or that the proposed payments are in the appropriate amount.

32.     Section 1191(c)(3) requires that the Debtor demonstrate that it has the ability to make all the payments under the plan, or that there is a reasonable likelihood that the debtor will be able to make all payments under the plan.

33.     However, as set forth herein, the Property is vacant, and upon information and belief, has not produced income for some period of time. The only source of possible funding is the proposed $75,000 in debtor in possession financing, which it is asserted will be used to pay administrative expenses, pay for capital improvements and pay creditors.

34.      However, the funding, cannot be approved and so it cannot be the basis upon which to confirm the Plan.  The financing motion requires the Court to approve a superpriority lien priming the First Lienholder.  However, that motion falls short of the requirements of Bankruptcy Code section 364(d), because, *inter alia*, as structured, the financing fails to adequately protect the First Lienholder.  Moreover, even if the Debtor could overcome

that hurtle, there is insufficient information to support the conclusion that the financing will generate funds sufficient to make the proposed Plan payments.  Indeed, the $75,000 is substantially less than the $120,000 slated to be paid to the First Lienholder some two years down the road.

35.     Moreover, the Debtor has not indicated that there is any ability to generate any income going forward in the near future. The Property is unrented and in need of repair. Simply put, there is no income, and absent an ability to rent the Property no anticipated income. Consequently, the Debtor cannot satisfy the requirement that the Debtor has the ability to make the Plan payments from the Debtor's income or that the Plan is feasible, as required by section 1129(a)(11).  Finally, there is no Plan provision requiring the liquidation of the nonexempt assets in the event the Debtor fails to make the required Plan payments, as required by section 1191(c)(3).

36.     The Debtor may argue that because it lacks income, there is no projected disposable income and hence the payments provided to Classes 2 and 3 are sufficient to achieve confirmation.  However, it is submitted, and as set forth hereinbelow, that such an argument demonstrates that the Plan is not proposed in "good faith," as required by Bankruptcy Code section 1129(a)(3). Finally, there is no Plan provision requiring the liquidation of the nonexempt assets in the event the Debtor fails to make the required Plan payments, as required by section 1191(c)(3).

**The Plan Is Not Proposed in Good Faith**

37.     Bankruptcy Code Section 1129(a)(3) requires that a plan must be proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3). Courts interpret

good faith to mean that "there exists 'a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.' *In re 20 Bayard Views LLC*, 443 B.R. 83, 95 (Bankr. E.D.N.Y. 2011).

38.    In addressing the "good faith," requirements of Bankruptcy Code section 1129(a)(3), the Second Circuit said that " . . . the good faith test means that the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." *Kane v. Johns–Manville Corp.,* 843 F.2d 636, 649 (2d Cir.1988) (quoting *Koelbl v. Glessing (In re Koelbl),* 751 F.2d 137, 139 (2d Cir.1984)).

39.    "As several courts have observed, the good faith requirement should be viewed in light of the totality of the circumstances surrounding the plan, and '[t]he requirement of Section 1129(a)(3) speaks more to the process of plan development than to the content of the plan.' " *20 Bayard Views id.,* 443 B.R. at 97 citing *In re Chemtura Corp.,* 439 B.R. 561, 608 (Bankr.S.D.N.Y.2010) (quoting *In re Bush Indus.,* 315 B.R. 292, 304 (Bankr.W.D.N.Y.2004)).

40.    The Court in *Chemtura*, found that the plan was proposed in good faith because the debtor had " . . . negotiated honestly and at an arm's length, including with the Equity Committee, in an effort to create a confirmable plan that would satisfy all parties . . .", had cooperated with the Equity Committee in marketing the debtor's asset and had reached many other settlements with regulators (*id.* 439 at 609). Conversely, after a court determined that the debtor's plan of reorganization required numerous stages, the first of which was to sell the lumber from the land to raise cash to build the building and the second stage was to obtain approval to build the access road, the court held the plan had not been proposed in good faith but rather to thwart efforts of creditor in completing its state foreclosure action, and denied confirmation (*see In re Weathersfield Farms, Inc.,* 14 B.R. 572 (Bankr. Vt. 1981)).

41.     In the instant case, the Debtor sought bankruptcy relief on the eve of the pandemic.  The Debtor moved to value the Property at substantially less than the value of the First Lienholder's lien, thereby reducing the value of the First Lienholder's secured claim from $424,000 to $120,000.  The Debtor then sought financing on a superpriority basis, by priming the First Lienholder's lien by approximately $75,000.  The Debtor served the First Lienholder at a location in California. There does not appear to have been any due diligence to locate the First Lienholder's counsel or otherwise reasonably calculated to afford the First Lienholder with adequate notice.

42.     The Plan was apparently filed without any consultation or input from the Trustee.  And apparently, the Debtor has not sought out the First Lienholder and has not sought to negotiate with the First Lienholder. The Plan proposes to substantially modify the First Lienholder's rights and contains no assurance that First Lienholder will even retain its lien, much less be paid, yet the Debtor has failed to provide a mechanism to even solicit the First Lienholder's acceptance of the Plan which acceptance is required under Bankruptcy Code section 1126.

43.     As set forth in the United States Trustee's objection to the Debtor's request for debtor in possession financing, the Debtor's financing motion seeks to thrust onto the First Lienholder the risks associated with improving the Property.

44.     The United States Trustee submits that under the standards enunciated by the Second Circuit, and the case law cited herein, the Debtor's Plan fails to meet the good faith requirements of Bankruptcy Code section 1129 (a)(3).

## **CONCLUSION**

45.     The Plan is unconfirmable because it fails to include all of the statutorily required information, such as the Debtor's history and required financial information, including the amount of the Debtor's projected disposable income, a liquidation analysis and projections. The failure to include this information, which serves as an explanation for how the Plan is to be implemented, also means that the Debtor cannot satisfy its burden that that the Plan is fair and equitable.  The Plan provides insufficient information from which to conclude that the Debtor can make those required payments, even if the Plan contained the necessary information from which to calculate the required payments.

45.     The reality of the case is that the Debtor has no ability to make any of the Plan payments because the Debtor is an entity owning non-income producing property. The Debtor's ability to convert the Property into income- producing property requires an expenditure of time and capital, the risk of both to be borne by the First Lienholder,  without protecting the First Lienholder by failing to provide for the liquidation of the non-exempt assets in the event of a default.

Finally, the Debtor's failure to coordinate its efforts with the Trustee or exercise

any diligence in seeking the First Lienholder demonstrates that the Plan is not proposed in good faith.

          **WHEREFORE**, it is respectfully requested that confirmation be denied and that the Court grant such other and further relief as may be just and proper.

DATED:  Central Islip, New York          WILLIAM K. HARRINGTON
          July 16 ,  2020            UNITED STATES TRUSTEE REGION 2
                                        560 Federal Plaza
                                        Central Islip, New York  11722
                                        Telephone (631) 715-7800

                      By: ***/s/ Christine H. Black***
                              Christine H. Black
                               Assistant United States Trustee

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
In re

**CORNELL ST. HEMPSTEAD, LLC,**

                Debtor.

-----------------------------------------------------x

**<u>Hearing Date and Time:</u>**
**July 29, 2020 @ 12 noon**

**<u>Objections Due:</u>**
**July 22, 2020**

Chapter 11, subchapter V

Case No. 20-71624-ast

<u>**CERTIFICATE OF SERVICE**</u>

       I, Joann Lomangino, am employed by the Office of the United States Trustee for the Eastern District of New York, hereby certify that on July 16, 2020, I caused a copy of the annexed, **United States Trustee's Objection To Confirmation Of The Debtor's Proposed Subchapter V Plan Of Reorganization,** to be served by First Class mail in the State of New York, with proper postage affixed to the persons and entities whose names and addresses appear on the annexed service list, and additionally by electronic mail to the email addresses listed.

Dated:  Central Islip, New York
      July 16, 2020

                                      **_/s/ Joann Lomangino_**
                                      Joann Lomangino

*Mailing List:*

**Seth D. Weinberg**
Hasbani & Light, P.C.
450 Seventh Avenue
Ste 1408
New York, NY 10123
sweinberg@hasbanilight.com

**Salvatore LaMonica, Esq.**
LaMonica Herbst & Maniscalco, LLP
3305 Jerusalem Avenue
Suite 201
Wantagh, NY 11793
sl@lhmlawfirm.com

**Deutsche Bank Nation Trust Company**
As Trustee for Long Beach Mortgage
Loan Trust 2005-3
1761 E St Andrew
Santa Ana, CA 92705